BENTON, J.
Convicted of aggravated assault with a deadly weapon for firing what she described as a warning shot intended to make her husband desist from physical abuse, Marissa Alexander argues the judgment against her (and her twenty-year sentence) should be reversed on multiple grounds. We reject her contention that the trial court erred in declining to grant her immunity from prosecution under Florida’s Stand Your Ground law, but we remand for a new trial because the jury instructions on self-defense were erroneous.
Appellant stood trial only after the trial court denied her pretrial motion seeking immunity from prosecution.[1] She maintains the trial court abused its discre *1187 tion in giving a self-defense instruction to the jury that, among other things, improperly shifted the burden to her to establish, beyond a reasonable doubt, that Mr. Gray was committing or was about to commit an aggravated battery when she discharged her pistol. At trial, the only real issue was whether she had acted in self-defense when she fired the gun. Because the jury instructions on self-defense were fundamental error, we reverse.
In his opening statement, defense counsel told the jury the appellant was forced to defend herself by firing the gun. (In closing, he described her as “terrified.”) After Mr. Gray accused her of infidelity and questioned the paternity of her week-old baby, she testified, she locked the bathroom door, yelling at him to leave, but Mr. Gray broke through the door, grabbed her by her neck, and demanded to know when she last had sexual relations with her ex-husband. She tried to push past him but he shoved her hard into the bathroom door. After struggling for what felt like an “eternity,” she testified, he relented and she ran from the bathroom straight to the garage.
Once inside the garage, appellant testified, she tried to leave the premises altogether but could not get the garage door open, and instead retrieved a gun (for which she had a permit) from the glove compartment of a vehicle in the garage. She then walked back into the house, she said, holding the gun by her side because she did not know whether Mr. Gray had left or not. As she walked into the kitchen, Mr. Gray saw the gun, and charged her “in a rage,” saying, “Bitch, I’ll kill you.” Startled, she raised the gun into the air and fired. Mr. Gray ran. According to appellant, she was forced to fire her gun into the air as a warning shot because it was the “lesser of two evils.”
For appellant, she testified, the firing of the gun was the culmination of a year-and-a-halfs abuse at her husband’s hands. She recounted for the jury at least three other incidents of physical abuse, beginning shortly after she moved in with him in early 2009. She described Mr. Gray’s choking her, attempting to strangle her, almost causing her to lose consciousness, and another occasion, six months later, when Mr. Gray shoved her repeatedly and violently, causing injuries that required hospitalization. That time she called law enforcement and Mr. Gray was arrested. She subsequently obtained a domestic violence injunction against him. In 2010, she testified, five months after she had become pregnant with Mr. Gray’s child, he “headbutted” her twice, tore her clothes, and threw her to the ground. During all these episodes — and at other times, as well — he threatened to kill her, she said.
Several witnesses, including appellant’s daughter, younger sister, mother, and ex-husband all testified they had seen appellant’s injuries, injuries they understood Mr. Gray had inflicted. Two of Mr. Gray’s sisters-in-law also testified that he had a reputation for violence in the community. The final defense witness, Mia Wilson, Ph. D., testified that the appellant met the criteria for “battered person’s syndrome.” The prosecution agreed the central question at trial was self-defense, and argued in closing: “Now at issue is self-defense in this case.... Remember at issue, really at issue in this case is whether Mr. Gray ran towards her, charged her and said, ‘Bitch I’m going to kill you.’ You have to decide if that actually happened.” ... “What this case is about, ladies and gentlemen, is whether this defendant under the law was justified in her actions of discharging that gun.” The fundamental question before the jury, the issue on which the jury’s verdict hinged, was self-defense.
*1188 To guide their deliberations, the trial judge instructed the jury on self-defense but did so in language that was problematic in two important respects, and which constituted fundamental error as a result. First, as regards aggravated battery, the jury was instructed as follows:
A person is justified in using deadly force if she reasonably believes that such force is necessary to prevent:
1. imminent death or great bodily harm to herself or another, or
2. the imminent commission of Aggravated Battery against herself or another.

AGGRAVATED BATTERY

To prove the crime of Aggravated Battery, the following two elements must be proven beyond a reasonable doubt. The first element is a definition of battery.
1. Rico Gray Sr. intentionally touched or struck MARISSA DANIELLE ALEXANDER against her will.
2. Rico Gray Sr. in committing the battery intentionally or knowingly caused great bodily harm to MARISSA DANIELLE ALEXANDER.
(Emphasis added.) By including the phrase “beyond a reasonable doubt” when giving the instruction on the aggravated battery prong of the self-defense instruction, the trial court improperly transmuted the prosecution’s burden to prove guilt beyond a reasonable doubt into a burden on the appellant to prove self-defense beyond a reasonable doubt, depriving her of a trial under the correct rule.
The defendant’s burden is only to raise a reasonable doubt concerning self-defense.[2] The defendant does not have the burden to prove the victim guilty of the aggression defended against beyond a reasonable doubt. “When a defendant claims self-defense, the State maintains the burden of proving the defendant committed the crime and did not act in self-defense.” Montijo v. State, 61 So.3d 424, 427 (Fla. 5th DCA 2011). “The burden never shifts to the defendant to prove self-defense beyond a reasonable doubt. Rather, he must simply present enough evidence to support giving the instruction.” Id.
We reject the state’s argument that the erroneous instructions on self-defense *1189 were not fundamental because self-defense was not appellant’s sole defense. While not every erroneous jury instruction on an affirmative defense is fundamental error, see Martinez v. State, 981 So.2d 449, 455 (Fla.2008), some errors reach down into “the legality of the trial itself.” Hamilton v. State, 88 So.2d 606, 607 (Fla.1956). Fundamental error occurs where the instruction is “so flawed as to deprive defendants claiming the defense ... of a fair trial.” Smith v. State, 521 So.2d 106, 108 (Fla.1988). On the evidence adduced below in the present case, it is entirely possible “that a verdict of guilty could not have been obtained without the assistance of the error alleged.” Hamilton, 88 So.2d at 607.
We also agree with appellant, moreover, that the trial court erred in giving the self-defense instruction when it indicated self-defense applied only if the victim suffered an “injury.” The appellant was charged with aggravated assault but— under any possible view of the evidence— inflicted no injury.[3] See Brown v. State, 59 So.3d 1217, 1218 (Fla. 4th DCA 2011) (holding standard self-defense jury instructions which authorized self-defense only if the victim suffered injury did not adequately state the law and negated appellant’s self-defense theory where no injury occurred). See also Garrido v. State, 97 So.3d 291, 294 (Fla. 4th DCA 2012) (citing Brown and Bassallo v. State, 46 So.3d 1205 (Fla. 4th DCA 2010)). Under the cases, the jury instructions’ requirement of an injury should have been eliminated. Since no injury occurred in the present case as a result of appellant’s firing her gun,[4] the trial court erred in giving the standard jury instruction on justifiable use of deadly force in defense of self.
The defendant was “entitled to have the jury correctly instructed on self-defense.” Montijo, 61 So.3d at 427. The trial court committed fundamental error in requiring proof beyond a reasonable doubt that appellant’s husband committed aggravated battery immediately before she fired the warning shot, or would have done so but for the shot. Accordingly, we reverse and remand for a new trial.
Reversed and remanded.
LEWIS, C.J., concurs.
WETHERELL, J., concurs in Result with Opinion.

. When the issue has been properly raised, the trial court must "determine whether the defendant has shown by a preponderance of the evidence that the immunity attaches.” Peterson v. State, 983 So.2d 27, 29 (Fla. 1st DCA 2008). See also Hair v. State, 17 So.3d 804, 805 (Fla. 1st DCA 2009). The Stand Your Ground law provides in relevant part:
... [A] person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony[.]
§ 776.012, Fla. Stat. (2010). The court may not deny a motion simply because factual disputes exist; indeed the "court must decide the matter by confronting and weighing only factual disputes.” Peterson, 983 So.2d at 29. See Dennis v. State, 51 So.3d 456, 463 (Fla.2010). We decline appellant's invitation to reweigh the facts.

. In deciding Montijo v. State, 61 So.3d 424 (Fla. 5th DCA 2011), the Fifth District relied on Murray v. State, 937 So.2d 277 (Fla. 4th DCA 2006), which involved facts similar to those in the present case. The defendant in Murray asserted self-defense, alleging he sought to prevent his roommate's commission of an aggravated battery, Murray, 937 So.2d at 278, and the court instructed the jury that Murray, the defendant, had to prove the elements of aggravated battery beyond a reasonable doubt. Id. at 279-80. In reversing the conviction, the court’s opinion asked whether Murray had to "prove the additional facts for self-defense beyond a reasonable doubt?” The court answered its own question, rhetorical or not:
No, he did not have to prove self-defense beyond a reasonable doubt. He did not have to prove even that his additional facts were more likely true than not. The real nature of his burden concerning his defense of justification is that his evidence of additional facts need merely leave the jury with a reasonable doubt about whether he was justified in using deadly force. Hence, if he wanted his self-defense to be considered, it was necessary to present evidence that his justification might be true. It would then be up to the jury to decide whether his evidence produced a reasonable doubt about his claim of self-defense.
Id. at 279 (footnote omitted). See also Alvarado v. State, 98 So.3d 80, 81 (Fla. 5th DCA 2012) (reaffirming Montijo on similar self-defense instructions).

. The jury instruction provided:

JUSTIFIABLE USE OF DEADLY FORCE

An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which MARISSA DANIELLE ALEXANDER is charged if the injury to Rico Gray Sr. resulted from the justifiable use of deadly force.

. The state argued that "injury” encompasses psychological or emotional injury such as fear. If so, such a definition should have been made explicit in the instructions. See Garrido v. State, 97 So.3d 291, 294-95 (Fla. 4th DCA 2012).